Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6043 | **DATE** | 4/16/2004 |
| **CASE TITLE** | THE HARTFORD INSURANCE CO. vs. BROAN-NUTONE, LLC | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

MEMORANDUM OPINION AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendant's motion for summary judgment is denied. Status hearing is set for May 18, 2004 at 9:15 a.m.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | APR 1 9 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| LG courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| The HARTFORD INSURANCE CO. a/s/o HARRY MAJOR, and STATE FARM INSURANCE COMPANIES a/s/o DORTHEA HOLLAND | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. 02 C 6043 |
| BROAN-NUTONE, LLC, a Delaware corporation, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Hartford Insurance Company (Hartford) and State Farm Insurance (State Farm) brought this subrogation action to recover for property damage to an apartment owned by Harry Major and rented by Dorthea Holland. The damage was caused by a fire, which plaintiffs allege started in a range hood manufactured by defendant Broan-Nutone LLC (Broan-Nutone). In their second amended complaint, each plaintiff brings a count of strict liability and negligence against defendant. Broan-Nutone moves for summary judgment, and, for reasons hereinafter set forth, its motion is denied.

## BACKGROUND

In the early morning of December 19, 2001, a fire broke out in apartment 301 at 1304 Lunt Avenue in Chicago. Harry Major owned the apartment building and Dorthea Holland rented the apartment. On December 18, 2001, Holland arrived home between 10:30 and 11pm and soon thereafter fell asleep on the couch. When she awoke, Holland noticed smoke in the living room and heard knocking at the door. She walked down a hallway toward the kitchen,



where she saw flames "shooting out" the top of the range hood. After an attempt to throw water on the flames, Holland left her apartment. The fire caused substantial damage to Major's and Holland's property.

Major is insured by Hartford and Holland is insured by State Farm. In the aftermath of the fire, the plaintiff insurance companies hired two experts, John Agosti and Erik Anderson, to determine the cause of the kitchen fire. John Agosti specializes in the point of origin of fires. He was a member of the Skokie, Illinois, Fire Department for twenty-eight years, including six years as the Deputy Fire Chief. After leaving the department, Agosti started his own firm of fire analysts, John Agosti & Assoc. In his investigation report, Agosti states that he reviewed the Chicago Fire Department Incident Report; Holland's transcript; a paper on range hood fires; engineering notes from Anderson Engineering, the forensic engineering firm hired by plaintiffs to investigate the cause of the fire; and letters and photographs. He also examined the burn patterns at the scene of the fire. He thereafter concluded that the fire in Holland's apartment originated in the kitchen's range hood, identifying the cause of the fire as an electrical malfunction in the hood. However, he admitted that his review of the technical literature for the hood, the exemplar hood, and the remnants of the hood in Holland's apartment, did not reveal any design or manufacturing defects. Agosti stated that the proximate cause of the electrical malfunction was beyond the scope of his investigation.

Plaintiffs hired Anderson Engineering to analyze whether an electrical element caused the fire. Erik Anderson, a co-owner of the firm, conducted the analysis for plaintiffs. He has a degree in electrical and electronic engineering, is a licensed professional engineer in three

states, and from 1987 through 2001 he attended six conferences on fire investigation. Since 1987, Anderson has performed product tests, fire investigations and failure analyses for his clients, and has testified in a number of cases. After examining the range hood and various other artifacts from Holland's apartment, the exemplar hood from a neighboring apartment, as well as photographs of the fire scene, Anderson concluded that the fire "was caused by a breakdown of insulation on energized conductors internal to the Broan vent hood above the stove." He noted arcing in the hood's copper wires and determined that the arcing, in conjunction with the breakdown of insulation, ignited the fire. When asked during his deposition whether his investigation revealed any design or manufacturing defects, Anderson replied that he had not "come to that opinion" and had "not formulated that opinion . . . ." He stated that he could not identify the cause of the breakdown in the insulation that led to the arcing in the wires, and, in his opinion, the fire.

## DISCUSSION

The court's function in ruling on a motion for summary judgment is merely to determine if there is a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Only if the evidence on file shows that no such issue exists and that the moving party is entitled to judgment as a matter of law will the court grant the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Bennett v. Roberts, 295 F.3d 687, 694 (7th Cir. 2002). Broan-Nutone argues that it is entitled to summary judgment for two reasons. First, it contends that the opinions of both of plaintiffs' experts, Agosti and Anderson, should be disregarded because they do not meet the standard of scientific reliability set by the Federal Rules of Evidence and Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

Without the experts' opinions, defendant argues, plaintiffs have not evidenced their *prima facie* case and therefore summary judgment is proper. Second, Broan-Nutone maintains that even if the experts' opinions are admissible, they do not criticize the design, manufacture, or instructions of the range hood, and thus there is no evidence of a defect or unreasonable danger related to the hood. Both of these arguments fail.

Under Federal Rule of Evidence 702, an expert may testify as to his/her opinion if it will assist the trier of fact in understanding the evidence or determining an issue, and if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Thus, the court must determine whether the experts' testimony is a reliable opinion based on sound methodology and will assist the trier of fact. *See* Dhillon v. Crown Controls Corp., 269 F.3d 865, 869 (7th Cir. 2001). Defendant argues that the experts' opinions are not reliable because they are not based on sound methodology.

In reaching his opinion regarding the origin of the fire, Agosti relied on an examination of the flame damage patterns, the remnants of the hood, the destruction to the structures above and adjacent to the hood, an exemplar Broan-Nutone range hood in the apartment next to Holland's, a review of the statement from Holland, and several other documents listed in his report. This is sufficient data. As explained in his report, Agosti's evaluation of the heat and flame damage patterns led him to conclude that the fire began in the range hood. This evaluation also eliminated the stove as a possible origin of the fire. Analysis of burn patterns, including the lowest area of burn, is a reliable method used by fire analysts in determining the origin of a fire. Agosti applied these methods to the evidence to reach a conclusion, which

satisfies the requirements for the admissibility of expert opinion.

Likewise, Anderson's opinion also satisfies the requirements listed in Rule 702. He applied his knowledge in electrical engineering to information gathered at the scene of the fire – he examined the range hood and other remnants from the fire. He also reviewed documentation of the scene and Holland's eyewitness report. During his investigation, Anderson was able to rule out certain electrical elements, such as the kitchen lighting and stove, as possible causes of the fire. Based on Agosti's report regarding the origin of the fire, and his observations of the hood wiring and photographs of the fire scene, including the gas stove, Anderson determined that the fire was caused by the breakdown of insulation and arcing of copper wires in the hood.

Yet, defendant contends that Agosti's and Anderson's opinions are unreliable. In support of its argument defendant cites four factors that courts use in assessing the reliability of an expert's opinion: (1) whether it can be tested, (2) whether it has been subjected to peer review, (3) the known or potential rate of error, and (4) its general acceptance among the relevant scientific community. Dhillon, 269 F.3d at 869 (citing Daubert, 509 U.S. at 593-94). Defendant highlights the experts' failure to test the range hood before reaching their conclusions. It contends that Bourelle v. Crown Equipment Corp., 220 F.3d 532 (7th Cir. 2000), illustrates the importance of testing when evaluating the reliability of an expert opinion. In Bourelle, as in Dhillon, the plaintiff alleged that a forklift was defectively designed. Bourelle, 220 F.3d at 537. In both cases the court held that expert testimony that a forklift should have been designed in another manner was not reliable because there was no testing regarding the alternative design theories. In Dhillon, the plaintiff did not allege that the forklift he was using

was defective. In fact, an inspection showed it to be in proper working order. 269 F.3d at 868. Rather, the plaintiff claimed that the design of the forklift, and all others like it, was defective. *Id.* In rejecting the opinion of plaintiff's expert the court emphasized that in cases that involve an allegation of defective design "we have consistently recognized the importance of testing the alternative design." *Id.* at 870.

Hartford and State Farm's second amended complaint does not specifically state whether they are alleging a design or manufacturing defect. Given the importance of testing alternative designs when alleging a design defect, plaintiffs have failed to provide sufficient evidence to support a claim under that theory. However, plaintiffs' response to the motion for summary judgment indicates that they are alleging a manufacturing defect, not a design defect. Therefore, the importance of testing an alternative design does not apply. Unlike in Dhillon and Bourelle, Hartford and State Farm allege there was a failure specific to the product that gave rise to the alleged injury – an electrical malfunction in the range hood due to improper wiring by defendant. The experts' opinions finding the origin of the fire to be the range hood and the cause of the fire to be an electrical malfunction in the hood, certainly support plaintiffs' allegations. The lack of testing by Agosti and Anderson does not render their opinions inadmissible. *See* Allstate Ins. Co. v. Maytag Corp., 1999 WL 203349 (N.D.Ill. 1999) (*quoting* Cummins v. Lyle Industries, 93 F.3d 362, 369 (7th Cir. 1996) ("[T]esting is not 'an absolute prerequisite to the admissibility of expert testimony.'") The Seventh Circuit has emphasized that a court's inquiry into the reliability of an expert's opinion should be flexible and that the factors of reliability listed in Daubert should not be viewed as an exhaustive list. *See* Bourelle, 220 F.3d at 536; United States v. Vitek Supply Corp., 144 F.3d 476, 485 (7th Cir.

1998).

In Spearman v. St. Paul Fire & Marine Ins. Co., 138 F.Supp.2d 1088 (N.D.Ill. 2001), the court held that a roofing expert's opinion regarding the cause of roof damage was reliable where he combined extensive experience in the field with a personal examination of the roof. Defendant attempts to distinguish the facts in Spearman from those in this case. However, as with the expert in Spearman, both Agosti and Anderson applied their expertise while conducting a personal investigation. Agosti went to Holland's apartment and observed the fire patterns and Anderson personally inspected the range hood. Agosti's and Anderson's investigations are substantially similar to the roofing expert's investigation in Spearman. The relevant reliability analysis of Agosti's and Anderson's opinions "focuses upon [the experts'] personal knowledge or experience," which plaintiffs have evidenced. *See id.* at 1097.

Defendant argues that even if the experts' opinions are admitted, it is still entitled to summary judgment because the experts do not assert a design or manufacturing defect in the range hood, nor a failure-to-warn by defendant. Without evidence of a defect, defendant maintains, plaintiffs have failed to establish a *prima facie* case of either strict product liability or negligence. To survive summary judgment in a product liability case, plaintiff must provide evidence that his injury resulted from a condition of the product, that the condition was unreasonably dangerous, and that the condition existed at the time the product left the manufacturer's control. H and H Sand and Gravel Hauler Co. v. Coyne Cylinder Co., 260 Ill.App.3d 235, 248, 632 N.E.2d 697, 706 (2d Dist. 1994) (citations omitted). In addition, for a negligence claim, plaintiff must provide evidence of defendant's duty of care, its breach of that duty, and plaintiff's resulting injury as a result of defendant's breach. *Id.*

A plaintiff in a product liability case may rely on circumstantial evidence to establish his case. *Id.* As the Illinois Appellate Court stated in <u>Bollmeier v. Ford Motor Co.</u>, 130 Ill.App.2d 844, 851, 265 N.E.2d 212, 217 (5th Dist. 1970), "[D]irect or circumstantial evidence which tends to prove that the product failed to perform in the manner reasonably to be expected in the light of its nature and intended function, such as proof of a malfunction which tends to exclude other extrinsic causes, is sufficient to make a Prima facie case on this issue." Plaintiff need not provide evidence of the specific cause of the injury in order to prevail. *See* <u>Samansky v. Rush-Presbyterian-St. Luke's Medical Center</u>, 208 Ill.App.3d 377, 389, 567 N.E.2d 386, 394 (1 Dist. 1990) (finding a plaintiff may establish a case of strict product liability, even though he cannot prove the precise cause of his injury if he presents sufficient evidence to support a reasonable inference that the product was defective at the time it left the defendant's control, and that this defective condition proximately caused the plaintiff's injury). While neither Agosti nor Anderson state that a specific manufacturing defect caused the fire, their opinions support a reasonable inference that the range hood failed to perform in the manner intended. Agosti, whose expertise is in identifying a fire's origin, found that the fire started in the range hood, and Anderson, who has electrical engineering expertise, found that a breakdown of the wire insulation in the wiring compartment, which originated from the defendant, ignited the fire, although he could not determine whether that breakdown was due to an imperfection in the insulation, thermal stresses, cuts, voltage spikes, or the like. Both experts also ruled out other possible causes of the fire. Though Anderson cannot provide the specific cause of the malfunction, he does provide sufficient evidence for plaintiffs' *prima facie* case. As there is a genuine issue of material fact regarding the cause of fire, summary

judgment is inappropriate.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is denied.

                                                               JAMES B. MORAN
                                           Senior Judge, U. S. District Court

April 16, 2004.